

**FILED**

JUN 29 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

ERIC LEROY NELSON, PH.D.
PO BOX 19134
SACRAMENTO, CA 95819
(415) 685-1367
enelson.0000@gmail.com

Plaintiff in Pro Per

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ERIC LEROY NELSON

    Plaintiff,

    vs.

MARIA CARMEN NELSON and
JAYALAKSHMI BADIGA,

    Defendants.

No. 2:17-CV  1 3 3 3 TLN EFB PS

**COMPLAINT**

(Jury Trial Respectfully Requested)

1
2      Plaintiff Eric LeRoy Nelson, respectfully moves the Court for entry of judgement in his
3  favor against Defendant Maria Carmen Nelson, and Defendant Jayalakshmi Badiga,
4  declaring in support as follows:
5
6               **INTRODUCTION TO THE COMPLAINT**
7
8    1.    DEFENDANT MARIA CARMEN NELSON (hereinafter called "Defendant
9  Nelson") and her attorney DEFENDANT JAYALAKSHMI BADIGA (California State Bar
10  #263709, hereinafter called "Defendant Badiga") (together hereinafter called "Defendants")

1  conspired to attempt to extort money from PLAINTIFF ERIC LEROY NELSON (hereinafter
2  called Plaintiff).

3      2.      Using her established, court recorded email address of record, and acting on
4  behalf of Defendant Nelson, on or about June 12, 2017 at 1:44 PM Defendant Badiga
5  demanded:

6          A. Plaintiff surrender to Defendant Nelson 100% of the funds that were awarded
7              to Plaintiff in a recent California marital dissolution trial.

8          B. Plaintiff forgive 100% of the debt assigned by the trial court for Defendant
9              Nelson to pay to Plaintiff.

10     3.      Plaintiff refused both Defendant's demand, whereupon thereafter by email, on or
11  about June 12, 2017 at 5:10 PM Defendant Badiga communicated a threat from her client,
12  Defendant Nelson, to Plaintiff, stating she would seek a lifetime domestic violence restraining
13  order (DVRO) against Plaintiff, as a consequence for not obeying her demands.

14     4.      A lifetime DVRO will destroy Plaintiff's ability to earn a living in four professions,
15  including police officer, police academy instructor, empirical expert on the police investigation
16  of domestic violence crime, and as an author and lecturer.

17     5.      On many occasions prior to the date when both Defendants threatened Plaintiff,
18  i.e., June 12, 2017, they were given explicit and detailed notice of the devastating effect a
19  DVRO will have on Plaintiff's four professions.  Therefore, when both Defendants threatened
20  Plaintiff, they did so with the full knowledge that this threat would strike fear into Plaintiff's
21  mind and emotions, and would devastate his peace.  Further, they knew that if they carried
22  out their threat, Plaintiff's ability to earn a living in his four professional careers would be
23  permanently destroyed.

24     6.      Indeed, Plaintiff is experiencing fear, anxiety, sleeplessness, and physical pain in
25  his stomach as a result of the threat made by both Defendants.  Plaintiff stands to loose, at a
26  bare minimum, hundreds of thousands of dollars if Defendants carry out their threat.

27

**COMPLAINT**

- 2 -

1    7.    There are two reasons this claim must be brought in federal court:

2              A. The Defendants broke federal criminal laws.

3              B. In a California court, the Defendants will attempt to conceal their criminal

4                    threats behind California Evidence Code § 1152, which might make them

5                    inadmissible.  California law is not binding upon the federal court.

6

7                    ## NATURE OF ACTION & FEDERAL JURISDICTION

8

9    8.    Plaintiff brings this action against Defendants Nelson & Badiga under 18 U.S.C.

10   §§ 1343, 1349, & 1951, both individually and as fellow conspirators.  Because this civil action

11   arises under federal laws, as enumerated in individual Claims for Relief (below), original

12   jurisdiction is established for the federal court pursuant to 28 U.S.C. § 1331.

13

14                   ## CERTIFICATION OF NON-DUPLICITY

15

16   9.    NONE of the claims for relief, as stated in this federal pleading, duplicate any

17   past or present claims pending before any other court.  Specifically, they arise from crimes

18   recently committed by Defendants Nelson & Badiga, and have only been presented in this

19   federal civil case.

20

21                   ## CITIZENSHIP & PERSONAL JURISDICTION

22

23   10.   Exercise of jurisdiction over Plaintiff Eric LeRoy Nelson is reasonable and

24   proper in this District because he is a citizen of the State of California, and has been

25   continually for more than 10 years.  Plaintiff is domiciled, earns a living, and pays taxes in

26   Sacramento County, California.  Exercise of jurisdiction over Plaintiff is proper pursuant to 18

27   U.S.C. § 1965(a).

**COMPLAINT**

1    11.    Exercise of jurisdiction over Defendant Maria Carmen Nelson is reasonable and

2  proper in this District because she is a citizen of the State of California, and has been for

3  more than 10 years.  She is domiciled in, works in, pays taxes in Sacramento County,

4  California.  Exercise of jurisdiction over Defendant Nelson is proper pursuant to 18

5  U.S.C. § 1965(a).

6    12.    Exercise of jurisdiction over Defendant Jayalakshmi Badiga is reasonable

7  because she is a citizen of the State of California.  She is domiciled in, and conducts business

8  in Sacramento County, California.  Exercise of jurisdiction over Defendant Badiga is proper

9  pursuant to 18 U.S.C. § 1965(a).

11    **PARTIES & BACKGROUND**

13    13.    Plaintiff ERIC LEROY NELSON is a former police officer whose specialty is the

14  investigation of domestic violence crime, sexual assault, and child abuse.  Plaintiff holds six

15  higher education degrees, including an Associate of Science (A.S.) in Administration of

16  Justice from Moorpark College; a Baccalaureate of Arts (B.A.) in Psychology from California

17  State University, Northridge; a Masters of Arts (M.A.) in Marital & Family Therapy from Azusa

18  Pacific University; a Master's of Science (M.S.) in Forensic Science from National University;

19  a Masters of Arts (M.A.) in Sociology from the University of California, Davis; and a Doctorate

20  of Philosophy (Ph.D.) in Criminology and Criminal Justice from the University of California,

21  Davis.

22    14.    Plaintiff earned his Ph.D. in 2014, publishing five chapters of his dissertation[1]

23  and establishing himself as a *top academic expert* on the investigation of domestic violence

---

[1] Nelson, E.L. *Police Controlled Antecedents Which Significantly Elevate Prosecution and Conviction Rates in Domestic Violence Cases* (2013a) 13 Criminology and Criminal Justice 5. Prepublished November 5, 2012, DOI: 10.1177/1748895812462594.  Available at http://crj.sagepub.com/content/13/5/526

**COMPLAINT**

- 4 -

crime by first responding police.  Plaintiff developed and empirically validated a six-step investigation model that triples rates of prosecution for domestic violence crime, and doubles rates of conviction.[2]  The United States Department of Justice, Federal Bureau of Investigation published Plaintiff's six-step best practice police investigation model on their website in December 2013.[3]

15.    At the time Defendant Nelson filed for divorce, Plaintiff was preparing to seek a tenure-track research professorship at a research university; develop software for police to use when investigating domestic violence crime; develop software for use by police supervisors to monitor officers for the use of the best-practice model; write an instructional manual for use with the best practice model; establish a professional seminar instruction company through which he would train police agency supervisors on how to implement and monitor for the use of the best practice method, and begin an empirical study to identify and validate a best practice model for the police investigation of rape and other sexual assault crimes.

16.    During the short time Defendant Nelson and Plaintiff were married, Defendant Nelson stole community property assets, did not pay bills, and also immediately sought and

Nelson, E.L. *Domestic Violence Sentencing: Coefficient to a Natural Process That Already Reduces Recidivism Simply as a Function of Aging* (2013b) 2 Crime Science 1.  Available at http://www.crimesciencejournal.com/content/pdf/2193-7680-2-9.pdf

Nelson, E.L. *Relationship Between Individual Police Officer Work Habits and the Stated Reasons Prosecutors Reject Their Domestic Violence Investigations* (2013c) 3 Sage Open 4.  Available at http://sgo.sagepub.com/content/3/4/2158244013511826

Nelson, E.L. *If You Want to Convict a Domestic Violence Batterer, List Multiple Charges in the Police Report* (2013d) 4 SAGE Open 1.  Available at  sgo.sagepub.com/content/4/1/2158244013517246.full.pdf

Nelson, E.L. *Investigating Domestic Violence: Raising Prosecution and Conviction Rates* (December, 2013e).  United States Department of Justice, Federal Bureau of Investigation.  Available at http://leb.fbi.gov/2013/december/investigating-domestic-violence-raising-prosecution-and-conviction-rates

[2] See especially, Nelson (2013a).

[3] ibid., Nelson (2013e).

1   was granted temporary spousal support upon leaving in January 2015.  The combinations of

2   these factors required Plaintiff to self-represent because Defendant Nelson had stolen all of

3   his money (California Superior Court, Sacramento Branch, Family Law Division, case 15 FL

4   00168.

5        17.    Defendant Nelson is a family law paralegal who represented herself for the first

6   19 months of the divorce proceedings from January 2015 to July 2016.  As a family law

7   insider, Defendant Nelson knew she could *get away with* ignoring California Family

8   Code § 2100, which requires her to serve her financial disclosure within 60 days of filing for

9   divorce.  Such disclosure would prove she stole money from Plaintiff.  After 10 months

10  Plaintiff learned how to seek penalties and sanctions, in order to compel Defendant Nelson to

11  serve these documents.  On November 30, 2015, when Plaintiff disclosed his plan to seek

12  penalties and sanctions against Defendant Nelson, she threatened Plaintiff saying, "If you

13  persist in this ridiculous discovery, I will file a DVRO against you, and then you won't be able

14  to get them" (NOTE: DVRO is the acronym for a "domestic violence restraining order").

15       18.    Under California Family Code § 6200 et seq., a DVRO can be issued by a

16  California family law judge on as little as a single finding of causing temporary emotional

17  upset, even if there are no accusations or findings of crime, violence, stalking, threats, etc.

18  Literally in California, it is "*make a partner mad / get a DVRO issued against you.*"  The day

19  after Plaintiff continued his financial discovery, Defendant Nelson fulfilled her threat and

20  sought a DVRO.  One was issued on January 15, 2016, on a single finding that more than a

21  year prior, Plaintiff had sent Defendant Nelson an email that made her emotionally upset.

22  This order expires January 15, 2019.  After the family law DVRO was issued, Defendant

23  Nelson immediately began to offer to dismiss the DVRO if Plaintiff would agree to pay her a

24  greatly inflated marital dissolution settlement amount.

25       19.    In January 2017, Plaintiff sued Defendant Nelson in California Superior Court for

26  misuse of the DVRO, for the reasons summarized in paragraphs 17 & 18 (case 34-2017-

27  00205970).  Plaintiff's pleading survived demurrer; therefore, Defendant will be tried by a civil

**COMPLAINT**

- 6 -

1    jury for her misuse of the DVRO, and the emotional damage she inflicted upon Plaintiff
2    through her misdeeds.

3         20.    Plaintiff appealed the DVRO on several constitutional grounds.  The appeal is
4    presently awaiting scheduling of oral arguments (California Court of Appeal, Third Appellate
5    District, appeal # C081576).

6         21.    Defendant Badiga is an attorney who began *pro bono* representation of
7    Defendant Nelson starting in the 18th month of divorce proceedings (July 2016).  Defendant
8    Badiga also provides *pro bono* representation for Defendant Nelson in the civil lawsuit
9    described in paragraph 19.  Defendant Badiga is not providing representation in the appeal.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Attempted Extortion Pursuant To 18. U.S.C. § 1951

16        All facts, as alleged above, are incorporated by reference as though they had been
17   fully set forth again, herein.

**Notice Of Value Of Plaintiff's Property Given To Both Defendants Many Times Prior To The Date They Made Their Threat**

20        22.    On many occasions prior to the Date when the Defendants threatened Plintiff,
21   both of them were given detailed notice of the effect of the DVRO in destroying Plaintiff's
22   careers.  Notice was given in pleadings, and also oral arguments as preserved in court
23   reporter transcripts.  A non-exhaustive list of dates of notice to each defendant individually, is
24   included below:

25        Dates Of Notice To Defendant Nelson: January 15, 2016, September 07, 2016,
26            February 01, 2017, March 01, 2017, March 29, 2017, May 10, 2017, and
27            May 31, 2017.

**COMPLAINT**

- 7 -

1                     <u>Dates Of Notice To Defendant Badiga</u>: September 07, 2016, February 01, 2017,

2                    March 01, 2017, March 29, 2017, May 10, 2017, and May 31, 2017.

3   **Email Address Used By Defendant Badiga Well Established As Her Own And**

4   **Under Her Control**

5       23.    The email address of Defendant is well established as jbadiga@weaveinc.org.

6   Defendant Badiga lists this email address on legal pleadings, declarations, and uses it in

7   communication with Plaintiff. Plaintiff has dozens of documents that, if needed, establish

8   convincingly that this is the email address used by Defendant Badiga to communicate with

9   him.

10         **Defendant's Act Of Extortion**

11      24.    On or about June 12, 2017 at 1:44 PM, Defendant Badiga, attorney acting on

12  behalf of Defendant Nelson, transmitted an email to Plaintiff, using her established email

13  address, demanding "100% of proceeds after cost of sale [of house]" to be given to

14  Defendant Nelson, plus "[Maria Nelson] will not pay Court-ordered Epstein amounts... [Eric

15  Nelson] will agree to dismiss the need for Epstein charges from [Maria Nelson]." In

16  exchange, Defendant Badiga said Defendant Nelson would dismiss the DVRO. When

17  Plaintiff did not accept these terms, on or about June 12, 2017 at 5:10 PM Defendant Badiga

18  responded using her established email address, threatening Plaintiff by saying "there's

19  enough for my client to seek permanent orders against you in a renewal. Let's evaluate both

20  outcomes to see what they are worth in a potential settlement."

21         **Immediate Fear Grips Plaintiff**

22      25.    Upon reading Defendant's threat to seek a permanent order against him, if

23  Plaintiff did not agree to give Defendant Nelson all of his family law settlement money, and to

24  forgive her the money she was ordered to pay him, Plaintiff immediately became sick to his

25  stomach. Plaintiff realized Defendant's threat to obtain a lifetime DVRO against him would

26  mean the permanent destruction of the use of his newly earned Ph.D., his ability to return to

27  work as a police officer, his ability to teach as a police academy instructor, his ability to obtain

1    employment as a professor of Criminal Justice, and his ability to obtain a research
2    professorship at a research university.

3    **Immediate Physical Sickness Grips Plaintiff**

4    26.    Plaintiff immediate became sick to his stomach, upon reading Defendant's
5    threat. Plaintiff continues to be sick to his stomach over this threat, on a daily basis. Plaintiff
6    is losing sleep, is having his day job performance impaired by constant worry, and he is
7    mourning of the impending, threatened permanent loss of all of his livelihoods.

8    **All Crime Elements Perfected Individually For Both Defendants, As Well As**
9    **Together In Criminal Conspiracy**

10    27.    Plaintiff argues that every element necessary to perfect the crime of attempted
11    extortion, as described in 18 U.S.C. 1951, were fully and individually perfected (completed,
12    fulfilled) both individually by Defendant Badiga, and by Defendant Nelson, as well as together,
13    acting in criminal conspiracy.

15    **SECOND CLAIM FOR RELIEF**

16    **Attempted Fraud By Wire Pursuant To 18 U.S.C. §§ 1343 & 1349**

18    All facts, as alleged above, are incorporated by reference as though they had been
19    fully set forth again, herein.

20    28.    This action arises under 18 U.S.C. § 1343, which defines fraud by wire as the
21    transmission by wire of any writings for the purpose of fraudulently obtaining money or
22    property, literally, "Whoever, having devised or intending to devise any scheme... to defraud,
23    or form obtaining money or property... transmits... by means of wire... communication... for the
24    purpose of executing such scheme or artifice..." (in part). "Where one scheme involves
25    several mailings, the law is settled that each mailing constitutes a violation of the statute"
26    (*Hanrahan v. U.S.*, 348 F.3d 363, 366 (D.C. Cir. 1965)).

27    29.    Section § 1349 of Title 18, U.S. Code, defines attempt and conspiracy, "Any
28    person who *attempts* or conspires to commit any offense under this chapter shall be subject

1  to the same penalties as those prescribed for the offense, the commission of which was the
2  object of the attempt or conspiracy" (literally, in full).

3      30.    As described in the First Claim For Relief, in two email sent on or about June
4  12, 2017, Defendants transmitted a specific financial demand for payment of money and
5  forgiveness of debt, sending this by email to Plaintiff. The second email declared a specific
6  threat to obtain a permanent DVRO against him if he did not meet the financial demands of
7  the Defendants.

8      31.    Defendants voluntarily and intentionally devised and participated in a scheme to
9  defraud Plaintiff out of money, doing so with the intention to defraud him. Defendants
10 reasonably foresaw that interstate wire communications would be used, and in fact were used
11 by Defendants to communicate their demand for money, and their threat to seek a permanent
12 DVRO against Plaintiff if he did not agree to their extortionous demands. By transmitting an
13 extortion demand by email, and a threat to Plaintiff, these being carried out using wire
14 communication (email), Defendants both individually and in conspiracy committed the crime
15 of fraud by wire.

16 **All Crime Elements Perfected Individually For Both Defendants, As Well As**
17 **Together In Criminal Conspiracy**

18     32.    Plaintiff argues that every element necessary to perfect the crime of attempted
19 fraud by wire, as described in 18 U.S.C. §§ 1343 & 1349, were fully and individually perfected
20 (completed, fulfilled) both individually by Defendant Badiga, and by Defendant Nelson, as well
21 as together, acting in criminal conspiracy.

22

23 **THIRD CLAIM FOR RELIEF**
24 **Intentional Infliction Of Emotional Distress**
25

26     All facts, as alleged above, are incorporated by reference as though they had been
27 fully set forth again, herein.

1    33.    The extreme and outrageous conduct of Defendants Nelson & Badiga, i.e., the

2    threatening Plaintiff with the lifetime loss of his professional careers, by seeking a lifetime

3    DVRO against him--this extreme and outrageous conduct has caused and continues to cause

4    Plaintiff severe emotional distress.

5    34.    Immediately upon receiving the threat contained in attorney Badiga's email sent

6    on or about June 12, 2017 at 5:10 PM, Plaintiff became sick to his stomach.  Plaintiff

7    developed nightmares, each night, that center on Defendant Badiga chasing him with a knife,

8    trying to kill him, or trying to run him over with a car.  Plaintiff also began to experience a

9    startle response each time he sees a person who fits the physical description of Defendant

10   Nelson.  Plaintiff's output at work immediately decreased, and for the first time in 2.5 years of

11   employment, his work product was criticized by his supervisor, saying it was inadequate.

12   Plaintiff agrees, it was inadequate because he was pre-occupied with an abiding fear that his

13   work careers, as described in paragraphs 4, and 13-15, will be destroyed forever.

14   35.    Defendants engaged in the extreme and outrageous conduct herein above

15   allege with wanton and reckless disregard of the probability of causing Plaintiff to suffer

16   severe emotional distress.

17   36.    As a proximate result of the extreme and outrageous conduct engaged in by

18   Defendants, Plaintiff suffered mental anguish and extreme emotional and physical distress all

19   to his general damage in an amount according to proof at trial.

20   37.    Conduct by Defendants, as herein alleged, was malicious and oppressive in that

21   it was carried out with willful and conscious disregard of Plaintiff's rights and subjected him to

22   cruel and unjust hardship.  Plaintiff is therefore entitled to an award of punitive damages  in

23   addition to intentional tort damages against Defendants Nelson & Badiga.

24   38.    As a direct, foreseeable and legal result of the criminal actions of Defendants

25   Nelson & Badiga, Plaintiff has suffered and continues to suffer embarrassment, severe mental

26   and emotional distress, nightmares, sleep loss, and discomfort, and loss of career

27   opportunities, and loss of income, all to Plaintiff's damage in an amount to be proven at trial.

28

**COMPLAINT**

1

2

3

## FOURTH CLAIM FOR RELIEF

## Unintentional Infliction Of Emotional Distress

4        All facts, as alleged above, are incorporated by reference as though they had been

5   fully set forth again, herein.

6        39.    All of the emotional harm explained in the Third Claim For Relief are re-asserted

7   here, if it is found Defendants did not intend to cause Plaintiff emotional harm.

8

9

10

## PLAINTIFF'S STANDING TO BRING THIS CASE

11        40.    Pursuant to *FWIPBS Inc. v. City of Dallas* (493 U.S. 215, 231, 1990), Plaintiff is

12   required to establish his standing to sue.   Plaintiff does so both by providing particularized

13   allegations of fact in this complaint, and also by the following specific statements on injury,

14   cause, and redress.

15        **Injury In Fact**

16        41.    Economic interests are legally protected. As described in paragraphs 17-18,

17   Defendant Nelson has already destroyed Plaintiff's multiple careers for the period of three

18   years. The only hope Plaintiff has to resurrect these careers is after the DVRO expires on

19   January 15, 2019, or for it to be overturned by the appeal which is pending with the California

20   Court of Appeal, Third Appellate District, or for it to be dismissed with prejudice by Defendant

21   Nelson.

22        42.    When Defendants Badiga & Nelson threaten to seek a permanent extension of

23   the three year order, this is a threat which is sufficiently imminent so as to convey permanent

24   economic injury to Plaintiff.  Plaintiff has a legally protected interest to be free from the

25   intentional destruction of his economic interests through the misuse of legal process to carry

26   out a criminal threat.

27        43.    Plaintiff has suffered, or will imminently and certainly suffer the following

28   particular injuries:

A. Loss of the use of his Ph.D., which is based upon Plaintiff's empirical research work that established a best practice for the investigation of DV crime, by police, as recognized by the U.S. Department of Justice.

B. Loss of the ability to pass a background check, as required to be hired as a professor of criminal justice. The President of the California Association of Administration of Justice Educators will testify in support of this fact, at trial.

C. Loss of the ability to obtain grants and funding to continue his best practice research, because he will sustain a public stigma as news of the DVRO circulates in the academic community.

D. Loss of the ability to write books and journal articles on domestic violence, and police best practices.

E. Loss of the ability to monetize his expertise's, by making paid speaking engagements.

F. Loss of at least a doubling of Plaintiff's yearly income, using all of the properties described in subsections A to E (above). Salary examples and expert witnesses will establish this at trial.

G. Loss of the ability to work as a police officer.

H. Loss of the ability to work as a police academy instructor.

I. Loss of peace of mind.

J. Loss of sleep.

**Causal Connection Between Defendant's Conduct And Plaintiff's Injuries**

44.    Plaintiff sustained these injuries for three years. Presently the DVRO is scheduled to terminate on January 15, 2019, at which time Plaintiff can begin the process of trying to re-build his career. Because these injuries already exist, there is a clear connection between Defendant's threat to make the DVRO permanent, if Plaintiff does not give her all of his settlement money, and forgive all of her debts. Plaintiff respectfully argues that it is not conjecture, but rather a certainty these injuries will continue beyond January 15, 2019 if Defendant Nelson fulfills her threat to make the DVRO permanent.

1    **Redressability**

2        45.    A jury award of money in equal value to Plaintiff's lost future earning capacity will

3    redress the lost of income sustained by the criminal acts of both Defendants.  Plaintiff states

4    that the relief that is sought will redress the injury caused to him by the acts, and threatened

5    acts of both Defendants.

6

7    **DISABLING INCOMPATIBILITY BETWEEN FEDERAL AND STATE ADJUDICATION**

8    **(WHY THIS CASE CANNOT BE HEARD IN A CALIFORNIA COURT)**

9

10        46.    Under California law, Defendants may successfully prevent Plaintiff from using

11    their threatening email, sent June 12, 2017 at 5:10 PM, as evidence at a civil trial that alleges

12    criminal extortion, if it is brought in the Superior Court of California.  Defendants could claim

13    use of the email as evidence is barred by California Evidence Code § 1152 et seq., because it

14    was sent during settlement negotiations for a family law case filed in Sacramento County.

15        47.    Such a claim cannot be made in federal court because California law is not

16    binding on the Federal judicial system.  Therefore, a disabling incompatibility exists between

17    federal and state adjudication, because in state court Plaintiff may be barred from using the

18    "smoking gun" email, which contains a specific threat; whereas, in federal court Plaintiff may

19    be permitted to use this essential evidence.

20

21    **JURY TRIAL REQUESTED**

22

23    With the utmost respect for the court, Plaintiff hereby requests a jury trial.

24

25    **PRAYER FOR RELIEF**

26

27    Plaintiff respectfully prays the following relief, such and further relief as this court may

28    deem just and proper, to include:

**COMPLAINT**

- 14 -

A.  For a money judgement representing compensatory damages including lost wages, earnings, future earnings, and all other sums of money, together with interest on these amounts, according to proof at trial.

B.  For an award of money judgement for mental pain and anguish and severe emotional distress, according to proof at trial.

C.  For general damages according to proof at trial.

D.  For punitive damages in an amount to be proven at trial.

E.  For pre-judgment and post-judgement interest according to statute.

F.  For reasonable research and writing fees based upon the court's determination of Plaintiff's expertise.

G.  For all costs associated with Plaintiff prosecuting this case.

H.  Issuance of a temporary restraining order and preliminary injunction, and a permanent injunction that bars both Defendants from threatening Plaintiff.

I.  Issuance of a permanent restraining order against Defendant Nelson pursuant to the language contained in 18 U.S.C. §§ 922(g) , 922(g)(8)(A), & 922(g)(8)(B).

J.  For such other and equitable relief as the Court may deem Plaintiff entitled to receive.

I declare under penalty of perjury that the foregoing is true and correct.

RESPECTFULLY SUBMITTED this 29th day of June, 2017.

ERIC LEROY NELSON, PH.D.

By: _____

Plaintiff

**COMPLAINT**

- 15 -